Submitted on remand from the Oregon Supreme Court March 6, affirmed September 26, 2012

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

GARY ROBERT STEPHENS, JR.,
*Defendant-Appellant.*

Multnomah County Circuit Court
020432550; A142463

287 P3d 1181

Peter Gartlan, Chief Defender, and Lindsey K. Detweiler, Deputy Public Defender, Office of Public Defense Services, for appellant.

John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Jamie K. Contrearas, Assistant Attorney General, for respondent.

Before Brewer, Presiding Judge, and Haselton, Chief Judge, and Nakamoto, Judge.

BREWER, P. J.

**BREWER, J.**

Defendant appeals from his conviction for driving under the influence of intoxicants (DUII), ORS 813.010. The charged conduct occurred on April 22, 2002, but defendant was not brought to trial until March 11, 2009. Defendant filed a motion for dismissal of the charging instrument on the ground that he was not afforded a speedy trial. ORS 135.747. After the trial court denied that motion, a jury convicted defendant, and he appealed. We affirmed without opinion, and the Supreme Court vacated our decision and remanded for reconsideration in light of *State v. Glushko/Little*, 351 Or 297, 315, 266 P3d 50 (2011). On reconsideration, we again conclude that the trial court properly denied defendant's motion to dismiss for lack of a speedy trial. Accordingly, we affirm.

On April 22, 2002, defendant was arrested for DUII and felon in possession of a firearm, ORS 166.270.[1] Later that same day, defendant signed a "Motion for Release or Security Amount Change." That document listed his address as "201 NW 94th St, Vancouver, WA 98665." On a line directly above defendant's signature, the document stated that, "I, the undersigned, being duly sworn, say the information on the Motion for Release or Security Amount Change is true." The custody report accompanying the document also listed the same address for defendant.

On April 24, 2002, defendant was released from custody after he signed a release agreement. The agreement obligated defendant to "appear at all times and places ordered by the court until discharged or final order of the court." It also informed defendant that

> "[A] violation of the release conditions will result in revocation of this Release Order, forfeiture of any security posted under this Order, arrest and possible punishment by contempt of court or a separate criminal charge for failure to appear, or both."

Defendant was charged with DUII by indictment on April 30, 2002. A warrant was issued for his arrest on the same day.

---

[1] Defendant ultimately was acquitted of that charge after a trial that took place while defendant was participating in diversion on the DUII charge.

The warrant also listed defendant's address as "201 NW 94th St, Vancouver, WA." Defendant was arraigned on May 2, 2002.

On May 15, 2002, defendant entered into a diversion agreement on the DUII charge. On a "monetary obligations payment agreement for diversion fees" form, defendant entered his address as "201 NE 94th St., Vancouver, WA, 98665." The diversion agreement required defendant to keep the court informed of his mailing address and also provided that "I give up my right to speedy trial or sentencing in any subsequent action on the charge." On the reverse side, the agreement provided that:

> "You have a right to have the DUII charge decided without unnecessary delay. You must agree to give up this right in order to enter into a diversion agreement with the court. If you are allowed to enter the diversion program, the court will stop the prosecution of the charge against you. If you fail to complete the program the prosecution will continue."

The agreement also provided that:

> "The court will terminate this diversion agreement if the court finds that you have violated the terms of the diversion agreement or that you were not eligible for diversion to begin with. The court will make this determination at a hearing where you can 'show cause' why you should not be removed from the diversion program. * * * **Notice of such hearings will be sent to you by regular mail**. If you fail to appear in court as directed by the mailed notice, the court can terminate the diversion agreement and prosecution of the offense will be resumed."

(Boldface in original.)

On December 10, 2002, the court issued an order requiring defendant to appear in court on December 23 to show cause why his diversion should not be revoked. That order indicated that copies were provided to "Defendant, Defense Attorney." The OJIN register shows that notice of the hearing was sent on December 10, 2002. However, a copy of that notice does not appear in the trial court file, and the OJIN register does not indicate the address, or addresses, to which the notice was sent. After a hearing on December 23, the court entered an order continuing defendant's diversion

with "strict compliance." That order contained defendant's signature above the designation "defendant."

On May 27, 2003, the court issued another order requiring defendant to appear on June 9, 2003, to show cause why his diversion should not be revoked. The order stated that copies of it had been provided to "Defendant, Defense Attorney." The OJIN register indicates that notice of that hearing was sent on May 27, 2003; once again, a copy of the notice does not appear in the trial court file. The OJIN register also indicates that the June 9 hearing date was set over at defendant's request. On the same day, the court signed an order resetting the hearing to June 16. The set over order indicated that copies of the order were provided to "Judge, Jail, Defense Attorney, District Attorney." Defendant did not appear at the June 16 hearing.

On June 18, 2003, the court entered an order terminating defendant's diversion based on, among other reasons, his failure to appear on June 16. The order directed the issuance of a bench warrant for defendant's arrest. On June 23, a bench warrant was issued that listed defendant's address as "201 NW 94th St. Vancouver, WA 98665." On July 7, a "Notice of Arrest Warrant" was mailed to defendant at "201 NW 94th St., Vancouver, WA 98605." An "attempt warrant service documentation" form generated by the Multnomah County Sheriff's Office reflected that:

> "7/07/03—Notice of arrest warrant letter printed and mailed to last known address of 201 NW 94th St., Vancouver, Washington 98605. MCSO maintains electronic copies of all returned warrant letters and has no supporting documentation to indicate this letter was returned.

> "* * * No attempt service was requested nor made as the only known address was outside the State of Oregon which is beyond the service limits of this warrant."

On November 19, 2008, defendant was arrested on the warrant. For the first time in this case, a custody report from that arrest listed defendant's address as "27021 NE 45th Ave., Ridgefield, WA." Defendant signed a release agreement on November 27, 2008, that listed his address as "27012 NE 45th Ave, Ridgefield, WA, 98642." On December 1, the court set a trial date of January 12, 2009. On

December 31, defendant obtained a set over of the trial date to January 28, 2009. On January 16, 2009, the state sought and received a set over to February 18. On February 6, defendant received another set over to March 10. On March 10, the court, on its own motion, set over the trial date to April 14. The court listed the "reason(s) for set over" as "no judges available." Finally, on April 2, the state was granted another set over to May 11. Defendant was tried before a jury on that date, and he was convicted on May 12.

Before trial, on March 11, 2009, defendant had moved to dismiss the charging instrument on the ground that the state had failed to bring him to trial within a reasonable time. Defendant argued that

> "The state brings [defendant] to trial on January 28, 2009, a total of 81 months (2427 days) after his indictment on April 30, 2002. The 13-month delay while [defendant] was in diversion is attributable to the defense. * * * Therefore, the delay from May 15, 2002 until June 18, 2003 is attributable to the defense.
>
> "The 66 month delay following [defendant's] unsuccessful diversion termination is attributable to the state. * * * [Defendant] did not cause or consent to the delay. The state did not serve the arrest warrant for 66 months. There is no evidence that the state took any action in the prosecution of this case during that time. * * * A delay will not be attributable to the defendant if the delay is beyond the defendant's control."

Defendant reasoned that the 66-month delay in this case was "longer than ordinarily expected to bring a defendant to trial on misdemeanor DUII," and, thus, was unreasonable.

At the hearing on the motion, defendant stipulated to the admission of state's exhibit 1, the "speedy trial packet." That packet included the "attempt warrant service documentation" form produced by the Multnomah County Sheriff's Office, a copy of the arrest warrant, and a copy of a notice of arrest warrant letter that was sent to defendant at "201 NW 94th St, Vancouver WA." The thrust of defendant's argument was that he had not received notice of the June 2003 show cause hearings, and, thus, he had not knowingly

failed to appear at those hearings. The trial court pressed defense counsel to elaborate that argument:

"[THE COURT]:    Is there any evidence about where he was actually living other than that this was the address that they had as the last known address—presumably from him, but I mean, what is the evidence about where he actually was?

"[DEFENSE COUNSEL]:    The only evidence regarding where he actually was, is that there was never any return service of mail as undeliverable[.]

"\* \* \* \* \*

"[THE COURT]:    So the defense position is that he actually received that notice?

"[DEFENSE COUNSEL]:    The defense position is that the Court—whether or not the defendant actually received the notice, there is no evidence in this record that that green notice that was submitted into evidence was put in the mail to the defendant so it's not necessarily the defense position that he received the—

"[THE COURT]:    Well, you've got to be one way or the other; it's either evidence to the effect that he was in fact living there and received the letter there because it didn't come back or it's not evidence of that fact. It's one or the other.

"[DEFENSE COUNSEL]:    Right. It's evidence that he was indeed living there.

"[THE COURT]:    All right.

"[DEFENSE COUNSEL]:    There is no evidence that the letter was mailed to that address—my point is that it's evidence—

"[THE COURT]:    I'm sorry, that's—that is—you didn't have any objection to the state's exhibit 1 which recites that notice of arrest warrant letter printed and mailed to last known address 2001 [*sic*] Northwest 94th Street, Vancouver, Washington. Now, and that it was—there was no documentation to indicate the letter was returned. Now you can argue the weight of that evidence, but you can't argue that it doesn't exist after you stipulated it in.

"[DEFENSE COUNSEL]: The note that your honor refers to is dated July 7th of 2003. What the defense was referring to when I said that he didn't have notice about the hearing would have been the hearing that happened before that warrant was issued. So the defense point is that he didn't—there's no evidence that he was mailed notice that he had this show-cause hearing coming up, not whether or not he was mailed the evidence of the warrant that was later issued."

In addition to the other evidence that was admitted, the trial court indicated that it was taking judicial notice of the OJIN register, which included the notations regarding notices that were sent pertaining to various hearing dates. After defense counsel observed that OJIN was "frequently riddled with human error and that it is not a reliable source of evidence in this proceeding," the court responded that "it's not simply a guess, it's what our records tend to show, so that's some evidence of it." Defense counsel then argued that "there may be some evidence of it, but that evidence is not particularly strong. There is no person in the courtroom today to testify that they were in court on either May 27, 2003 * * * it doesn't say that those notice hearing or the order was ever mailed to defendant." Counsel urged that

"[I]t's unclear from the record that the defendant had actual notice of these hearings when the bench warrant was issued. The defense has two arguments, though. The first is that the defendant was not actually notified of the hearing and therefore didn't fail to appear. The breach should be attributed to the state because—and not to the defendant—because the defendant didn't actually know about the hearing and did not therefore fail to appear. The defense second line of argument is that if the court disagrees with me and find that he did knowingly fail to appear at that time, that the state, that the entire absence is still not attributable to the defense * * * because the state knew where to find the defendant and didn't do so.

"* * * * *

"[T]he period of time following the termination from diversion should be attributed to the state and the reason that the defense submits that are two-fold. First, the defense position is that there isn't sufficient evidence to show that the defendant had notice of his hearing and that

he actually failed to appear at that hearing. Second, the state's evidence shows that the State of Oregon knew where he was living, *it was the residence that he lived at when he entered the diversion program, it was the residence that he lived at when they sent a letter to Vancouver, Washington*."

(Emphasis added.)

The trial court denied defendant's motion to dismiss, explaining that

"Whether he knew that there was a warrant, he knew that he was—he had failed to appear for a hearing for which he had in fact been requested to. Or he knew that he had earlier been placed on the continuum of diversion on a strict compliance basis, he knew that there was a new request for termination and diversion, he chose not to appear. Those are findings of fact that I can make from the record, and I can—and I am finding that the entries in diversion—the entries in OJIN are persuasive and I'll take judicial notice of what's occurred in my own court.

"* * * * *

"I am finding based on the file and on the evidence received, that the defendant knew of the pendency of the case, and had been given notice of the requirement that he appear on June 9, 2003, for termination of diversion, and that he in fact knew that he was obligated to appear at that time based on the notice, but that he voluntarily failed to appear and voluntarily remained outside the jurisdiction of the court, and made no effort to contact the court to advance a case which had been pending already for a year, and—or close to a year while he was unsuccessfully trying diversion, and therefore that he consented to the further delay until the warrant was in fact served on him."

Defendant renews his arguments on appeal, asserting that the cumulative delay attributable to the state in this case was unreasonable under ORS 135.747. Defendant argues that

"In contrast to *Glushko/Little*, here, the approximately 70-month delay attributable to the state after defendant failed to appear at a court hearing was not reasonable. First, defendant did not knowingly fail to appear in this case. As defendant argued in his opening brief, the state failed to offer evidence that defendant was notified of his rescheduled

court date. The record indicates that defendant's attorney was present in court without him when the case was set-over. Additionally, the state later sent notice of the issuance of an arrest warrant to an incorrect address. Thus, even if one could assume, as the state argues, that defendant was sent a copy of the set-over order, it is very likely that it was sent to an incorrect address.

"Second, the state failed to establish that defendant caused the delay in his case by failing to appear. Rather, the state's mistake concerning his address could have caused the delay. Had the state sent the warrant notice to the correct address, defendant may have understood that he needed to take action if he wanted to move his case along. Finally, the state offered no explanation for why it could not serve the warrant sooner. Without any justification for failing to serve the warrant in over five years, the delay in this case was unreasonable."

The state replies that, because defendant knowingly failed to appear, the cumulative delay resulting from that failure was reasonable under *Glushko/Little*.

ORS 135.747 provides:

"If a defendant charged with a crime, whose trial has not been postponed upon the application of the defendant or by the consent of the defendant, is not brought to trial within a reasonable period of time, the court shall order the accusatory instrument to be dismissed."

The Supreme Court has adopted a process for analyzing a motion to dismiss under ORS 135.747. A court is to "determine the relevant amount of delay by subtracting from the total delay any periods of delay that [the] defendant requested or consented to." *Glushko/Little*, 351 Or at 305. The court then is to determine whether that delay is reasonable, which requires an examination of "all the attendant circumstances." *Id.* at 315-16 (citing *State v. Johnson*, 339 Or 69, 88, 116 P3d 879 (2005)). More specifically, "*the circumstances that cause the delay* generally will determine whether the delay (and thus, the overall time period for bringing the defendant to trial) is reasonable.'" *Id.* (quoting *Johnson*, 339 Or at 88) (emphasis in *Glushko/Little*).

Because defendant waived his right to a speedy trial when he entered into the diversion agreement, the period of delay between May 15, 2002 and June 16, 2003, when defendant's diversion was terminated, does not count toward the calculation of the relevant amount of cumulative delay in this case. *State v. McQueen*, 153 Or App 277, 281, 956 P2d 1046, *rev den*, 327 Or 554 (1998). Accordingly, we examine the approximately 66 months of delay that occurred between the termination of defendant's diversion and his arrest on the outstanding warrant on November 19, 2008.

In *Glushko/Little*, the Supreme Court rejected the construction of the word "consent" in ORS 135.747 that this court had adopted in *State v. Gill*, 192 Or App 164, 84 P3d 825 (2004) and *State v. Kirsch*, 162 Or App 392, 987 P2d 556 (1999). Based on the text, context, and historical origins of ORS 135.747, the court held that

> "a defendant gives 'consent' to a delay only when the defendant expressly agrees to a postponement requested by the state or the court. Returning to the facts of this case, it is clear that the delays at issue were not a product of postponements that [the] defendants requested or postponements that the state or the court requested and to which [the] defendants agreed."

*Glushko/Little*, 351 Or at 315. Based on that holding, we now conclude that defendant's failure to appear at the show cause hearing on June 16, 2003, did not constitute consent to the ensuing 66 months of delay. Accordingly, that delay was not attributable to defendant. Instead, the entire period between June 16, 2003, when defendant's diversion was terminated, and November 19, 2008, when defendant was rearrested, is attributable to the state.

As set out above, after defendant's arrest he was given a trial date of January 12, 2009, and, as a result of several setovers—some at the request of the state and others at defendant's request—he ultimately was tried on May 11, 2009. Subtracting the periods of delay that defendant requested during that interval, and then adding the residual period of delay to the 66-month period that we have already attributed to the state, yields a cumulative relevant amount

of delay of approximately 70 months that is attributable to the state.

With that understanding in mind, we turn to the second step of analysis that the court prescribed in *Glushko/Little*:

"Even if, as in this case, defendants did not apply for or consent to the delays in question, dismissal is required only if the state fails to bring defendants to trial 'within a reasonable period of time.' ORS 135.747.

"* * * * *

"In this case, there is no question but that both [the] defendants caused the delays in bringing their cases to trial by their failures to appear. Both had notice that they were legally obligated to appear. Moreover, both were informed—defendant Glushko in the order requiring personal appearance and defendant Little in his release agreement—that failure to appear would result in a warrant for their arrest being issued. With knowledge of the legal requirement to appear and the consequences that would result from failure to appear, both defendants did not attend their respective hearings. As a result of their failures to appear, the state suspended the prosecutions, the court issued warrants for their arrest, and the cases were not tried until more than eight years later.

"* * * * *

"The fact that the state may or may not have been able to take additional steps to track down [the] defendants is not the point when, as in this case, defendants were entirely in control of the amount of delay that followed their failures to appear. * * * Both knew about their obligations to appear, as we have noted, and both knew that failing to do so would result in the issuance of warrants for their arrests. Both were well aware of the fact that their failures to appear delayed the prosecution of the cases against them.

"* * * * *

"In summary, we conclude that, although defendants did not consent to the delays that occurred in each of their cases as a result of their failures to appear, the delays were nonetheless reasonable. The trial court therefore did not err in denying [the] defendants' motions to dismiss on statutory speedy trial grounds."

350 Or at 315-17 (internal citations omitted).

Defendant attempts to distinguish *Glushko/Little* on two grounds: first, that "the state failed to offer evidence that defendant was notified of his rescheduled court date" and, second, "the state failed to establish that defendant caused the delay *** by failing to appear" because the state had sent the notice of arrest warrant to the wrong address. "Had the state sent the warrant notice to the correct address," defendant contends, "defendant may have understood that he needed to take action if he wanted to move this case along."

We reject defendant's second argument because it is inconsistent with his statements before the trial court. As set out above, defendant argued to the trial court that the fact that the warrant notice, which was sent to "201 NW 94th St, Vancouver WA," was not returned as undeliverable amounted to "evidence that he was indeed living there." Defendant's argument before the trial court was that, notwithstanding the fact that notice of the arrest warrant had not been returned as undeliverable, there was no evidence in the record that notice *of the rescheduled* show cause hearing had ever been mailed to his address. Indeed, defendant argued that

> "the state's evidence shows that the State of Oregon knew where he was living, *it was the residence that he lived at when he entered the diversion program, it was the residence that he lived at when they sent a letter to Vancouver, Washington.*"

(Emphasis added.) Accordingly, defendant cannot credibly assert that the state's failure to send notice of the arrest warrant to his "correct address" is evidence that he did not knowingly fail to appear.

Defendant's argument that the state failed to prove that he received notice of the June 16 show cause hearing requires closer examination. The trial court rejected that argument, explaining that

> "[w]hether he knew that there was a warrant, he knew that he was—he had failed to appear for a hearing for which he had in fact been requested to. Or he knew that he had earlier been placed on the continuum of diversion on a strict compliance basis, he knew that there was a new request for

termination and diversion, he chose not to appear. Those are findings of fact that I can make from the record, and I can—and I am finding that the entries in diversion—the entries in OJIN are persuasive and I'll take judicial notice of what's occurred in my own court."

We are bound by a trial court's findings of historical fact if there is evidence in the record to support them. *State v. McFarland*, 247 Or App 481, 487, 269 P3d 106 (2011). The following evidence in the record supports the trial court's pertinent findings: (1) defendant was notified in the diversion agreement that any failure to comply with the terms of diversion would result in a "show cause" hearing and that notice of such a hearing "will be sent to you by regular mail;" (2) the warrant notice sent to 201 NW 94th St, Vancouver, WA 98605," was not returned as undeliverable; (3) the diversion agreement also notified defendant that if defendant "fail[ed] to appear in court as directed by the mailed notice, the court can terminate the diversion agreement"; (4) defendant was obligated by his release agreement to "appear at all times and places ordered by the court," and that agreement further provided that his failure to do so could result in "arrest and possible punishment"; (5) defendant had appeared for a previous show cause hearing on December 10, 2002, and the OJIN register contained a "notice hearing" notation associated with that hearing that is identical to the notation in the register immediately before the June 9, 2003, hearing; (6) the show cause order that directed defendant to appear on December 10, 2002, included a notation that copies were provided to "defendant, defense attorney" that is identical to a notation that appears on the order directing defendant to appear at the June 9, 2003, hearing; and (7) defendant requested a set over at the June 9, 2003, hearing, and the order setting that hearing over to June 16, 2003, included a notation showing that copies were provided to "Judge, Jail, Defense Attorney, District Attorney."

Defendant nevertheless maintains that, because the order setting the show cause hearing over to June 16, 2003, did not indicate that he was provided with a copy, there is no evidence that he had notice that he was required to appear on that date. We disagree.

First, the trial court took judicial notice of the hearing notice notations in the OJIN record; although defendant argued that those notations were not entitled to significant weight, he did not ultimately object to the court's having taken judicial notice of them. *See State v. Bennett*, 249 Or App 379, 380 n 1, 277 P3d 586 (2012) (taking judicial notice "of the trial court's case register in the Oregon Judicial Information Network (OJIN), which serves as the official register." *See* ORS 7.010 (records of circuit and appellate courts include register); ORS 7.020 (register to note the date of making filing and entry of, among other things, a judgment)).[2] Among other things, those notations showed that the court sent notice of the June 9 hearing date to both defense counsel and defendant and that, on June 9, the court set over the hearing at defendant's request. Second, the diversion agreement required the court to send defendant notice by regular mail of show cause hearings relating to his removal from the diversion program. A presumption attaches that the court clerk sent those hearing notices, including notice of the rescheduled June 16 hearing date, to defendant at the address that he had provided to the court. *See* OEC 311(1)(j) (creating a presumption that "[o]fficial duty has been regularly performed"). Third, there is a presumption that each of those notices was, in fact, received. OEC 311(1)(q). Finally, as noted, the order setting the hearing over to June 16 indicated that defense counsel had been provided with a copy of the order. Defense counsel did not indicate that he had lost contact with defendant, and the trial court was entitled to infer from the fact that counsel had notice of the June 16 hearing that defendant did as well. Under those circumstances, the fact that defense counsel had notice of the rescheduled hearing date furnishes an additional inference that defendant also had notice. Accordingly, there

---

[2] The fact that the OJIN notations constitute the court's record of its own actions distinguishes this case from cases such as *Frady v. Frady*, 185 Or App 245, 58 P3d 849 (2002), where this court held in a contempt proceeding that, although the trial court could take judicial notice of the existence of *a sheriff's return of service* in the court file, it was not authorized by that means to consider as evidence the contents of that document. We ultimately held that the return of service nonetheless was admissible under OEC 803(8)(b) as a "[r]ecord" of a "public office[] or agenc[y]" setting forth a "[m]atter[] observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding however, in criminal cases matters observed by police officers and other law enforcement personnel[.]" *Id.* at 248.

is evidence in the record to support the trial court's finding that defendant had notice of the June 16 hearing, and we are bound by that finding. *McFarland*, 247 Or App at 487.

Because defendant knowingly failed to appear for that hearing, he "was entirely in control of the amount of delay that followed his failure to appear," regardless of what additional steps the state may have been able to take to locate him. *State v. Hernandez-Lopez*, 251 Or App 546, 554, 284 P3d 1170 (2012). It follows that, although defendant did not consent to the delay that occurred in this case as a result of his failure to appear, that portion of the delay was nonetheless reasonable. The remaining period of cumulative delay of approximately four months also was reasonable. The trial court therefore did not err in denying defendant's motions to dismiss on statutory speedy trial grounds.

Affirmed.